# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEANNIE DELK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-01759-TWP-TAB |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Jeannie M. Delk ("Ms. Delk") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.  BACKGROUND

### A.    Procedural History

On March 16, 2009, Ms. Delk filed applications for DIB and SSI alleging a disability onset date of November 1, 2008. Ms. Delk's claims were denied by the Disability Determination Bureau ("DDB") on June 3, 2009. After Ms. Delk's request for reconsideration was denied by the DDB on October 2, 2009, she filed a request for an administrative hearing on November 10, 2009. Ms. Delk was represented by counsel at the hearing in Indianapolis, Indiana on February 11, 2011, before Administrative Law Judge Ronald T. Jordan ("the ALJ"). The ALJ held a second hearing on April 26, 2011 to elicit the testimony of Dr. Mark Farber ("Dr. Farber"), a medical expert, along with Ms. Constance Brown, a vocational expert ("the VE"). On August

23, 2011, the ALJ denied Ms. Delk's applications. On September 28, 2012, the Appeals Council denied Ms. Delk's request for review of the ALJ's decision. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review. Ms. Delk filed this civil action, pursuant to 42 U.S.C. 405(g), for review of the ALJ's decision.

**B.      Factual Background**

At the time of her hearing, Ms. Delk was 37 years old, recently separated from her husband, and the mother of three teenage children. She previously worked as a cashier, pizza maker, contractor for county government, and most recently, a licensed practical nurse ("LPN"). Ms. Delk attained a high school degree and attended Ivy Tech State College where she earned a certificate as an LPN in 2002. She was taking additional courses in pursuit of a bachelor's degree, but she did not complete the requirements for that degree.

Ms. Delk has a longstanding history of pain due to degenerative conditions and stopped working as an LPN in November 2008 after she collapsed at work. In 2009 she began suffering from profound fatigue, anxiety and depression and shortly thereafter her employer terminated her employment and she has not worked since February 2009. The record shows that prior to her medical troubles, Ms. Delk was a hard-working woman and devoted mother to her three children.

After she stopped working, Ms. Delk pursued a claim for long-term disability insurance under the insurance policy she had with her former employer. Her medical and vocational records compiled during that process reveal regular trips to a pain management consultant, appointments with her primary caregiver, Michael Emmons, D.O. ("Dr. Emmons"), trips to two endocrinologists, and a 2009 assessment by vocational rehabilitation specialist, Mark Pinti, who concluded that "[she] is not capable of performing her past work as a Licensed Practical Nurse or

any sustained remunerative work activity at any level of exertion. . . ." R. at 1047. Despite these efforts, Ms. Delk was denied long-term disability by her private insurer, Cigna, but ultimately settled with the insurer.

Dr. Emmons became Ms. Delk's primary care provider shortly after she collapsed at work in November 2008. During the course of their treating relationship, Dr. Emmons observed Ms. Delk's physical and psychological condition firsthand. Dr. Emmons thought that Ms. Delk might be developing Cushing Syndrome, an illness that affects the adrenal gland and is generally difficult to diagnose. Following up on this possibility, Dr. Emmons referred Ms. Delk to specialists. Ultimately, Ms. Delk saw two endocrinologists, each of whom was unable to diagnose her with Cushing Syndrome because her hormone levels were within the normal range. Nevertheless, Dr. Emmons persisted in his belief that Ms. Delk suffered from Cushing Syndrome, which he testified to when he gave a deposition to support her claim for private, long-term disability insurance benefits. In addition to his observations of Ms. Delk's physical condition, Dr. Emmons observed changes in Ms. Delk's mental and emotional state. As a result, he referred her to a psychiatrist to assess her panic attacks, anxiety, and depression. Ms. Delk, received a score of 59 on the Global Assessment of Functioning ("GAF"), which revealed only moderate impairment.

The ALJ held two hearings to determine whether Ms. Delk was entitled to benefits. Ms. Delk first appeared and testified at a hearing on February 11, 2011. On April 26, 2011, the ALJ held a second hearing with a medical expert, Dr. Farber, and vocational expert to assist him in ruling on Ms. Delk's application

Dr. Farber explained that while Ms. Delk's ailments likely gave her significant pain, many of them were not supported by objective medical evidence. Furthermore, Dr. Farber noted

that her pain management providers did not have tests for her rheumatoid arthritis or osteoarthritis but continued to treat her anyway. During the hearing, the ALJ read to Dr. Farber some portions of Ms. Delk's medical history verbatim that were not in the file he reviewed for the hearing. Nevertheless, the ALJ relied on Dr. Farber's assessment of Ms. Delk's health when he opined as to her Residual Functional Capacity. The ALJ concluded that Ms. Delk suffered from three severe impairments that could be supported by the medical evidence: degenerative disc disease, incisional hernia, and obesity.

## II.   DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and

whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweight the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 797 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3ed 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate justification for

his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.   THE ALJ'S DECISION

The ALJ noted in his opinion that Ms. Delk had met the insured status requirements of the Act through December 31, 2013.  At step one, the ALJ found that Ms. Delk had not engaged in substantial gainful activity since November 1, 2008 and has not attempted to work since that time.   At step two, the ALJ found that Ms. Delk had the following severe impairments: degenerative disc disease, incisional hernia, and obesity.  The ALJ also found that Ms. Delk had the following non-severe physical impairments:  high cholesterol, high triglycerides, high blood pressure, and a knee condition.  Furthermore, at step three, the ALJ found that Ms. Delk did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ concluded that Ms. Delk had the RFC to perform less than the full range of light work, including lifting, carrying, and pushing twenty pounds occasionally and ten pounds frequently.  He also found that Ms. Delk had the ability to stand and walk six hours in an eight hour day with the opportunity to sit up to five minutes each hour.  Additionally, the ALJ noted that Ms. Delk could occasionally bend and stoop but should never squat, kneel, crawl, or climb.  The ALJ concluded his RFC determination by stating that the claimant must avoid all work around hazards such as unprotected heights or unguarded, dangerous, moving machinery.  At step four, the ALJ determined that Ms. Delk is unable to perform any of her past relevant work.  At step five, the ALJ found that considering Ms. Delk's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform; consequently, Ms.

Delk is not disabled for purposes of the Act from her alleged onset date through the date of the ALJ's decision.

## IV.   DISCUSSION

Ms. Delk raises several issues on appeal that she alleges constitute reversible error.  She first contends that the ALJ erred at step three by assessing an RFC that was not supported by substantial evidence.  Ms. Delk contends that the ALJ improperly weighed the opinion evidence, failed to evaluate all of the medical opinions offered by her treating physician, failed to provide a good reason for refusing to give the opinions of the treating physician controlling weight, and failed to incorporate all of the claimant's physical and mental impairments into his RFC findings.  Ms. Delk also argues that the ALJ cherry-picked the opinion of the medical expert who testified at the hearing by failing to properly weigh it with the regulatory factors.  Specifically, she alleges the ALJ neglected to elicit an updated assessment after receiving objective evidence that statements made by the medical expert could have changed his testimony.  Additionally, Ms. Delk contends that the ALJ failed to minimally articulate his reasons for discounting the opinion of a vocational rehabilitation specialist.  The specialist opined that Ms. Delk could not sustain any work activity.  Ms. Delk contends that the ALJ improperly dismissed her own testimony regarding the functional effects of her subjective symptoms.  As a result of these errors, Ms. Delk claims that the ALJ presented an incomplete hypothetical question to the VE, which led to the ALJ relying on unreliable testimony as the basis of his step five burden of showing which jobs Ms. Delk could perform.

The Court will address each issue in turn.

**A.     The ALJ Properly Weighed the Opinion Evidence.**

Ms. Delk argues that the ALJ failed to weigh the opinion evidence offered by her treating physician, the impartial medical expert, and the vocational expert. The Court respectfully disagrees and finds that the ALJ properly weighed the testimony of these experts, all of which supported his conclusion regarding her RFC.

1.      **The Treating Source's Opinion**

The Seventh Circuit has acknowledged that the opinions of a treating source are not absolute. *Peabody Coal Co. v. McCandless*, 255 F.3d 465, 469 (7th Cir. 2001). Nevertheless, an ALJ must decide whether to give the opinion of a treating source controlling weight. Social Security regulations explain that if "a treating source opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2). An ALJ must "minimally articulate" her reasons for discounting a treating source's opinion." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling, but remains a piece of evidence for the ALJ to weigh. *Hofliesen v. Barnhart*, 439 F.3d 375 (7th Cir. 2006). When considering what weight to give a medical opinion, "[a]n ALJ must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744 (7th Cir. 2010) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Elder*, 529 F.3d at 415; *Hofliesen*, 439 F.3d at 377). The *Larson* court further explained that an ALJ could not merely state that a treating physician's opinion was entitled to "some weight"; instead, the

ALJ should have evaluated the physician's opinion under the factors outlined in 20 C.F.R § 1527. 615 F.3d at 751.

*Dixon v. Massanari* provides some additional guidance for assigning the weight of a treating source's opinion. 270 F.3d 1171 (7th Cir. 2001). In *Dixon* the plaintiff endured a long journey through the Social Security Administration that involved three administrative hearings, two trips to the Social Security Appeals Council, and two reviews by the district court. *Id.* at 1174. At issue in *Dixon* was whether one of the ALJs appropriately considered the weight given to a treating source's opinion. *Id.* at 1177. One of Dixon's treating physicians determined that she was "seriously disabled" when he treated her following a kidney stent operation, which was causing her pain. *Id.* at 1175. The *Dixon* court explained the inherent difficulties of bias in assigning weight to the opinion of a treating source, noting that treating sources may "want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Id.* at 1177 (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985)).

Similar to the facts in *Dixon*, Ms. Delk's treating source, Dr. Emmons, was the sole medical source to conclude that Ms. Delk was disabled. The ALJ noted that "[n]o other treating source has indicated that the claimant is disabled." R. at 26. The fact that Dr. Emmons was the sole medical source who concluded Ms. Delk was disabled raises the issue of inherent bias that the *Dixon* court identified as a factor that may reduce the value of treating source opinions.

More significantly, the ALJ wrote in his opinion that "the claimant's primary care physician, Dr. Emmons, rejected the opinions of two endocrinologists in order to assert that the claimant suffers from Cushing's disease" when both specialists ran tests that came back negative for the disease. R. at 25. Because Dr. Emmons' conclusion regarding Cushing Syndrome is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" it is not

entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2). *See also Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (observing that the opinions of a treating physician receive "controlling weight only if [they are] not inconsistent with other substantial evidence in the record"). This inconsistency is the kind that the *Hofliesen* court identified as creating a basis in the record for the ALJ to not give the treating source's opinion controlling weight. Many of Dr. Emmons' medical opinions cite Cushing Syndrome as a driver of her mental and physical medical issues, but the other evidence in the record does not support the conclusion that she suffered from Cushing Syndrome. Reviewing the medical evidence from Dr. Emmons as a whole demonstrates that the ALJ was justified when he did not give controlling weight to Dr. Emmons' opinions because his findings were not consistent with other medical evidence in the record, as the factors set forth in 20 C.F.R § 404.1527(c)(2) and binding precedent from the Seventh Circuit require. Therefore, the Court concludes that the ALJ properly considered the opinion of Dr. Emmons and did not commit reversible error.

### 2. Medical Expert Testimony

Ms. Delk next takes issue with the ALJ's use of medical expert testimony. She contends that the ALJ failed to consider the expert's opinion as a whole and apply the regulatory factors in 20 C.F.R. § 1527 when he assessed the testimony of Dr. Farber. She further argues that the ALJ failed to update his assessment of her medical history after he received an updated MRI of Ms. Delk's lumbar and cervical spine after the second hearing.

The ALJ explained that he gave great weight to the testimony of Dr. Farber because "[he] had the opportunity to review the entire record and he is experienced in Social Security disability evaluation as an independent expert." R. at 26. In support of this determination the ALJ cited SSR 96-2p. R. at 26. SSR 96-2p explains how an ALJ should interpret and apply treating and

non-treating source opinions under 20 C.F.R. § 1527(d)(2). The ALJ also cited SSR 96-6p. R. at 26. SSR 96-6p explains SSA policy on the consideration of factual findings made by State Agency physicians and other outside medical consultants. Seventh Circuit case law reveals that an ALJ cannot draw from some parts of a doctor's report and ignore others; rather, the ALJ must consider a doctor's report as a whole. *See Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010) (noting that an ALJ focused on only one portion of a doctor's report rather than the report as a whole); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (explaining that an ALJ "may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence") (internal quotations omitted); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (indicating that an ALJ may not "selectively discuss[]" portions of a doctor's report and not address other portions of the same report).

Ms. Delk first argues that when Dr. Farber qualified his statement that "walking would be . . . slow . . . it would be slow-paced walking" the ALJ selectively chose from the testimony rather than considering the opinion as a whole. R. at. 1834. Although this specific limitation for slow-paced walking is not in the written opinion, the Government accurately notes that the ALJ incorporated the requirement for slow-paced walking into the hypothetical he presented to the VE present at that hearing. The ALJ also explained that he accepted the "claimant's valid subjective complaints" and based his conclusion that "light exertional work is more reasonable" on the basis of Dr. Farber's testimony. R. at 24. This explanation helps demonstrate that the ALJ did consider the restriction for "slow-paced walking" with Dr. Farber's testimony as a whole.

Ms. Delk next argues that the ALJ failed to apply the regulatory factors outlined for medical opinions in 20 C.F.R. § 1527(c). Those regulations lay out a "checklist" of factors for the ALJ to consider when addressing medical opinion testimony. Buttressed by SSR's 96-2p and

96-6p the ALJ correctly weighed the medical opinions offered by Dr. Farber. The ALJ consistently referred to Dr. Farber as a "medical expert" and contrasted his views of Ms. Delk's ailments with that of her primary treating source, Dr. Emmons. The ALJ relied on the assistance of Dr. Farber when he made his conclusions on the medical issues in the case. In fact, he specifically called for the second hearing to have the benefit of Dr. Farber's experience with the medical issues involved in Ms. Delk's case to help guide his disability determination. In the opinion, the ALJ acknowledged that Ms. Delk had "valid subjective complaints" and experienced recurrent pain, as evidenced by her frequent trips to a pain management provider, but the ALJ based his reliance on Dr. Farber's testimony on his ability to clarify that "[Ms. Delk] has many alleged symptoms and alleged impairments with no supporting clinical evidence or diagnoses." R. at 25.

Ms. Delk makes much of the fact that although the ALJ stated that Dr. Farber "had the opportunity to review the entire record" he was missing four pages of musculoskeletal medical records that the ALJ read to him verbatim during the hearing. Ms. Delk focuses on Dr. Farber's statement that updated imaging of her lumbar spine "could make a tremendous difference[.]" R. at 1830. Dr. Farber further testified "[i]t would be very easy for me to see that if she has enough disease now, she could either equal or meet a listing. Or she would certainly maybe downgrade it to sedentary which might be helpful to her." R. at 1830. She contends that by failing to present these updated MRIs to Dr. Farber, the ALJ erred by interpreting that evidence without the aid of a medical expert.

Even though Dr. Farber expressed his opinion that updated imaging could change his assessment of Ms. Delk's RFC, he explained that it was "guesswork" without the benefit of new imaging. R. at 1830. After that hearing the ALJ allowed Ms. Delk the opportunity to submit an

updated, May 2011 MRI. The updated MRI revealed Ms. Delk's lumbar spine showed slight abnormalities, which the ALJ stressed was "not significantly different from the above [April 2004] diagnostic test results[,] as reviewed by Dr. Farber." R. at 24. Unlike *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996), which Ms. Delk cites in support of the proposition that an ALJ should provide a guide to the reasoning used to arrive at the result when assessing medical records without the aid of a medical expert, the ALJ here was able to base his conclusions on the updated imaging from the evidence in the record as a whole and Dr. Farber's testimony regarding the April 2004 lumbar spine imaging. Furthermore, in *Rohan* the medical evidence at issue was depression, a psychiatric disorder and class of illness that courts often struggle to properly evaluate. Therefore, the Court concludes that the ALJ properly considered the testimony of Dr. Farber because the ALJ evaluated Dr. Farber's testimony as a whole. The Court further concludes that the ALJ was able to explain how he used Dr. Farber's prior testimony to assess the updated, lumbar spine imaging to support his findings and reliance on the testimony of Dr. Farber. As a result, the Court concludes that the ALJ did not commit reversible error.

### 3. Vocational Specialist Opinion

Ms. Delk next contends that the ALJ failed to minimally articulate his reasons for discounting the opinion of a vocational rehabilitation specialist, Mark Pinti, while the Government observes that "[t]he ALJ gave Pinti's opinion some weight as a non-medical source . . . [b]ut did not give Pinti's conclusory, non-medical opinions significant weight . . . ." Def. Br. at 20. The Government stresses that the "minimally articulate" standard requires the ALJ to "generally explain the weight given to an opinion from a non-medical source such as Pinti." Def. Br. at 20.

Social security rulings provide some guidance for how to assess the opinions of non-medical sources like vocational experts. The ALJ properly characterized Mr. Pinti's report as fitting into the "other sources" category defined in 20 C.F.R. 404.5139(d). R. at 27. SSR 06-3p explains how the opinions of non-medical sources can help the ALJ develop a fuller picture of a social security claimant's impairments. Mr. Pinti's report was prepared in connection with Ms. Delk's pursuit of a long-term disability insurance claim, which was ultimately settled out of court. As a result, the ALJ is not bound by conclusions contained in the report. *See* 20 C.F.R. § 404.1504 (explaining that disability determinations by governmental or nongovernmental agencies are not binding on the Social Security Administration). The ALJ does not have to discuss every detail in the record that justifies his finding. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002).

Mr. Pinti's report concludes that Ms. Delk suffers from "Cushing's disease" – a conclusion borne out by no medical source other than Dr. Emmons. R. at 1044, 1047. The ALJ's statement that "I have applied some weight to [this] opinion[,]" in the course of articulating Ms. Delk's RFC, meets the "minimally articulate" standard. R. at 27. The ALJ explained that he considered Mr. Pinti's report in conjunction with statements made by Ms. Delk's family members and friends, which support his conclusions that Ms. Delk's change in demeanor, evidenced in part by Mr. Pinti's report, contributed to his assessment of her ability to work. R. at 27. Therefore, the Court concludes that the ALJ properly considered Mr. Pinti's testimony and did not commit reversible error.

**B.    Substantial Evidence Supported the ALJ's RFC Determination.**

Ms. Delk contends that the ALJ failed to consider the full extent of her impairments, both physical and mental, when providing a hypothetical to the VE. The Government contends that

the ALJ sufficiently evaluated Ms. Delk's mental and physical impairments. The ALJ considered the record as a whole and appropriately credited Ms. Delk's physical and mental impairments.

### 1. Physical Impairments

Ms. Delk first argues that the ALJ failed to consider the full extent of her osteoarthritis, rheumatoid arthritis, and her history of knee pain. She cites evidence from her pain management provider to support her assertions that the ALJ did not consider the extent of her rheumatoid arthritis and osteoarthritis. These pain management treatment notes do not include testing results for either rheumatoid arthritis or osteoarthritis. As a result, the ALJ was justified in concluding that these impairments did not support the conclusion that they should be considered in the hypothetical posed to the VE.

In general, the ALJ must consider all of the evidence in the record when formulating an RFC, but "[t]he ALJ's failure to address specific findings . . . does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision." *Sims*, 309 F.3d at 429. However, in *Myles v. Astrue*, the court noted that an ALJ cannot "simply ignore evidence." 582 F.3d 672, 676 (7th Cir. 2009). The Seventh Circuit has further observed that an ALJ may not "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In short, the ALJ can neither "cherry-pick" evidence nor ignore it all together. So long as the ALJ's opinion provides a "consideration of all the relevant evidence" the court will defer to the ALJ's ruling. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

The ALJ did not directly reference Ms. Delk's osteoarthritis and rheumatoid arthritis but did reference the testimony of Dr. Farber, who reviewed Ms. Delk's medical history and

concluded that there was not sufficient medical evidence to gauge the extent of Ms. Delk's rheumatoid arthritis. Similar to *Sims*, which explained that the ALJ did not have to examine every piece of evidence in the record, the ALJ in this case could base his conclusions on the extent of Ms. Delk's physical impairments from the fact that Dr. Farber noted there were no tests for osteoarthritis and no recent tests detailing the progression of Ms. Delk's rheumatoid arthritis. The record does reveal a handwritten note indicating Ms. Delk's history of juvenile rheumatoid arthritis, but it is nearly unreadable and of limited use because it predates the alleged onset date by several decades. Under *Denton*, an ALJ cannot "cherry-pick" evidence, but in this case the ALJ was justified in assigning Dr. Farber's testimony "great weight" because the pain management records detail what might be characterized as treatment notes of a self-reported ailment rather than a diagnosis based on test results. Absent record evidence detailing the scope of Ms. Delk's osteoarthritis, the ALJ was justified in relying on Dr. Farber's testimony to support his findings of her physical impairments. The evidence Ms. Delk cites to support her history of knee pain demonstrates that most of these instances of knee pain arose prior to her disability onset date. Additionally, the ALJ stated in his opinion that because Ms. Delk's current knee pain was "recently diagnosed it has not yet met the durational requirement [and] . . . is not a severe medical impairment." R. at 19. Therefore, the Court concludes that the ALJ properly considered the full extent of Ms. Delk's physical impairments and did not commit reversible error.

**2.      Mental Impairments**

Ms. Delk next contends that the ALJ did not properly consider the extent of her mental impairments. She claims that because the ALJ did not include reference to the effects of her anxiety and depression the ALJ presented an incomplete hypothetical to the vocational expert. The Government notes that scant evidence in the record supports the conclusion that Ms. Delk

even suffered from these impairments. The ALJ concluded that "the claimant's medically determinable mental impairments of depression and anxiety . . . are . . . 'non-severe' impairments." R. at 19.

In general, an ALJ's hypothetical question to the VE "must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The Seventh Circuit has also consistently held that an ALJ must provide a vocational expert with the "totality of a claimant's limitations" to properly assess a claimant's RFC. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). *See also, Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). As with consideration of physical impairments, an ALJ must make a determination "based upon[] all of the relevant evidence in the record" to assess the severity of a mental impairment. *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984). However, in this case, the ALJ explained in this opinion that Ms. Delk did not suffer from a severe mental impairment.

Although Ms. Delk exhibited anxious behaviors when interviewed by a State DDB interviewer, the DDB interviewer is not a medical source opinion. Ms. Delk demonstrated similar anxious mannerisms when she went for a consultation with Dr. Rebecca Wages ("Dr. Wages"), a consulting psychologist. The notes Dr. Wages took reveal how Ms. Delk acted rather than what the medical evidence indicated about the extent of her mental impairments. In essence, Ms. Delk would like the Court to adopt these types of "sit-and-squirm" observations when they are made by psychological examiners, but then admonishes the Court not to adopt them in other situations. The Seventh Circuit has expressed concern about evidence of observed discomfort because its "probative value can so easily be manipulated" but in the same breath that court also noted there could be some "validity [to] the hearing officer's observation of the

claimant." *Powers v. Apfel* 207 F.3d 431, 436 (7th Cir. 2000).  Such observations can show a person feels anxiety or discomfort at that moment, but those same observations can fall short of establishing a clinical diagnosis of a mental impairment.

The citations the ALJ made to another State psychological consultant, Dr. Kladder, who concluded that Ms. Delk suffered from non-severe mental impairments, further support the ALJ's finding that Ms. Delk did not suffer from a severe mental impairment.  R. at 26.  Another State psychological consultant, J. Larsen, Ph.D, corroborated Dr. Kladder's conclusion, which provided additional support for the ALJ's finding on this issue.  R. at 26.  Furthermore, Dr. Wages' notes reveal that Ms. Delk also exhibited good concentration, judgment, and decision-making ability along with her recorded anxiety.  Dr. Wages' findings seem consistent with her GAF score of 59, which revealed only moderate impairment.  Ms. Delk notes that Dr. Emmons also observed her declining emotional and psychological state.  Even though Dr. Emmons prescribed anti-anxiety medications and Prozac, the ALJ was not required to give his opinions any special weight because he is not a specialist in mental health issues.  SSR 06-03p. Additionally, Ms. Delk did not follow up on Dr. Emmons' suggestion that she seek further psychiatric care to evaluate her reported feelings of anxiety and depression.  Therefore, the Court concludes that the ALJ properly considered the full extent of Ms. Delk's mental limitations and did not commit reversible error by failing to present mental limitations to the VE.

**C.     The ALJ Properly Dismissed Ms. Delk's Testimony.**

Ms. Delk argues that the ALJ improperly dismissed her own testimony regarding her subjective symptoms.  The Government counters this claim by noting that the ALJ's credibility finding is entitled to deference.  The ALJ provided specific reasons throughout his opinion as to why he did not find Ms. Delk's testimony fully credible.

The ALJ applies a two-step process to arrive at a credibility determination. Social Security Ruling 96-7p requires the ALJ to determine whether there is a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged, and second, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which the symptoms limit the claimant's capacity for work. If the claimant's symptoms are not substantiated by objective medical evidence, the ALJ makes a finding on the credibility of the claimants statements based on the record as a whole. SSR 96-7p; 20 C.F.R. § 404.1529(c)(4). To assess the credibility of the individual's statements, the ALJ must review the claimant's daily activities, the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type dosage, effectiveness, and side effect of any medication the claimant takes to alleviate the symptoms; any measures other than treatment the claimant uses or has used to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3).

Reviewing courts generally provide great deference to an ALJ's credibility determination. Courts will defer to an ALJ's credibility determination unless the determination is "patently wrong." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2010). The court does not undertake "a *de novo* review of the medical evidence" but instead "examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Seventh Circuit cautions an ALJ from relying on "meaningless boilerplate" recitations that a claimant's testimony is not credible. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). If the ALJ does not explain the reasons supporting a credibility determination a court will reverse the ALJ's credibility determination. *Elder*, 529 F.3d at 413.

19

The ALJ cited specific reasons supporting his determination that Ms. Delk's testimony was not credible. He noted that her failure to follow-up on recommendations to seek psychiatric treatment, her ability to perform simple household tasks, the use of conservative treatment to manage her ailments, and citations to pain management records that predated her disability onset date factored into his assessment of her credibility. These factors, viewed as a whole, support the ALJ's conclusion that Ms. Delk's complaints were not fully credible.

Ms. Delk contends that the court's reasoning in *Roddy v. Astrue*, 705 F.3d 631 (7th Cir. 2013) leads to the conclusion that the ALJ placed too much weight on her failure to seek psychiatric care. Unlike the plaintiff in *Roddy*, who was unable to afford the necessary treatment, Ms. Delk had health insurance and could have followed up on the recommended treatment. R. at 16. Furthermore, the ALJ weighed this failure to seek psychiatric treatment as one factor among many that weighed against finding her testimony credible. Ms. Delk also takes issue with the manner in which the ALJ viewed her ability to perform simple household tasks, like loading and folding the laundry, attempting to wash dishes, and preparing simple meals as overly suggestive of her ability to work. Much like his treatment of her failure to follow up on psychiatric care, the ALJ viewed these daily activities as one factor in his analysis supporting Ms. Delk's ability to establish a routine for herself rather than the ability to perform full-time work. Finally, Ms. Delk argues that the ALJ failed to give proper weight to her history of pain. Again, the ALJ had reason to believe that Ms. Delk was managing her pain with conservative treatment and medication. The ALJ considered Ms. Delk's subjective complaints as one of the factors that weighed against a credibility determination in her favor. Therefore, the Court concludes that the ALJ properly weighed Ms. Delk's credibility and did not commit reversible error.

## V.     <u>**CONCLUSION**</u>

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED.**


**SO ORDERED.**

Date: _____    03/18/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana



DISTRIBUTION:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov